### STATE v. HENRY W. FOSTER.

Submitted March 16, 1916—Decided June 6, 1916.

1. An indictment charged a director of a trust company with overdrawing his account in violation of the Crimes act. *Comp. Stat., p.* 1796, § 171. The overdraft was charged to have taken place on August 9th, 1913. The defendant had left with the secretary of the trust company three notes of a third party for sale to country banks. The secretary had credited the defendant's account on July 17th, 1913, with the proceeds of one of the notes. *Held,* that it was error to allow the secretary to testify that the note was not submitted to the board of directors before it was purchased, since the indictment did not charge a violation of section 15 of the Trust Companies act. *Comp. Stat., p.* 5661.

2. When a witness denies any recollection of a relevant conversation, it is proper on cross-examination to ask him what he said at a later time, either by way of stimulating his memory or of discrediting him.

On error to the Essex Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and BERGEN.

For the state, *Frederick F. Guild* and *Wilbur A. Mott.*

For the plaintiff in error, *Jerome T. Congleton.*

The opinion of the court was delivered by

SWAYZE, J. The defendant was indicted under section 171 of the Crimes act (*Comp. Stat., p.* 1796) for overdrawing his account in the Roseville Trust Company. His defence was that he had left with Smith, the secretary and treasurer of the trust company, to be sold to country banks three notes of the Alpha Alcohol Utensil Company; that he understood from Smith that the notes had been sold and that he was entitled to credit for the proceeds. If such had been the fact, the defendant would have had a considerable balance to his credit. In truth, Smith had caused credit to be given the defendant

for the proceeds of one of the notes in a form that indicated on the books that it had been discounted by the trust company, and had directed the bookkeeper to leave a line in the ledger for another credit. The second credit was not in fact made. After the failure of the bank, Smith handed back to the defendant two of the three notes. The note which had been discounted was paid, apparently by the maker, and the defendant made good his overdraft.

We think there are two errors that require a reversal of the conviction. Smith testified that the note for which Foster received credit was purchased by the trust company at a time when Foster was a director. He was then asked: "Was that note submitted to the board of directors before it was purchased?" This was objected to on the ground that Foster was not on trial for any such offence. The reference was obviously to the crime defined in section 15 of the Trust Companies act. *Comp. Stat., p.* 5661. The state undertook to justify the question on the ground that the evidence would tend to show the defendant's knowledge of the state of his account. The argument was that if Foster was in such a financial condition that he found it necessary to do an illegal act in order to get credit, he must have known that his account was overdrawn. The note was credited to the account July 17th. The indictment does not charge any then existing overdraft. The two overdrafts charged in the indictment are both averred to have been made on August 9th; in fact, the check which constituted the overdraft was charged to the account on that day; the only difference between the two counts is that one charges the overdraft to have been the amount of the check; the other charges it to have been the total overdraft at the close of business on August 9th, the difference consisting of charges on August 4th and August 8th. If we assume in favor of the state that the credit of the note on July 17th was illegal under the Trust Company act, that accomplished illegality does not tend to prove an overdraft in August. On the contrary, the very fact, if it were a fact, that it was an accomplished illegality, would demonstrate that there was no overdraft for two weeks thereafter. Foster

would properly think that he might draw on the proceeds of the note. Whatever might be said of the alleged illegal discount as tending to prove a then existing overdraft, it had no tendency to prove future overdrafts, and none other are charged in the indictment. To infer an overdraft in August from evidence from which an overdraft in July might possibly be inferred would not be permissible. We have assumed in favor of the state that the transaction of July 17th was illegal as to Foster. The evidence does not warrant any such conclusion. Both Smith and Foster, who alone knew the facts, testified that the notes were turned over to be discounted at some other institution. If Foster ever knew that the note had been purchased by the Roseville Trust Company, it was not until August 1st. Section 15 of the Trust Companies act requires that the act shall be done knowingly to constitute the crime. Smith, of course, had knowledge, but, in the absence of proof of knowledge by Foster of what Smith had done, Foster was guilty of nothing illegal. Under these circumstances, the evidence allowed over objection that the note was not submitted to the board of directors was most prejudicial to the defendant. The court admitted it on the theory that Foster's knowledge of the alleged illegality tended to prove that he knew his account was overdrawn, and the jury could not have avoided the inference that Foster was so desperate that in order to escape the consequence of overdrawing, he would participate in a criminal discount by the trust company. How prejudicial the evidence was is shown by the charge of the judge. He referred at some length to the fifteenth section of the Trust Companies act, and said that the office of director was not one thrust upon the incumbent but was assumed and held voluntarily by him; "be must, therefore, be expected to assume, with the office, the full measure of responsibility incidental to it." This portion of the charge was not germane to the case unless the judge meant to give the jury the impression that the defendant might be convicted for a violation of the Trust Companies act. It was error because no such violation was charged in the indictment.

There is another error. Smith, when recalled by the state, testified, in answer to questions by the court, that only one of the notes appeared in the account; that he did not see the other two until handed back to Foster after the bank closed. Thereupon the counsel for defendant on cross-examination asked Smith if he did not after the bank closed return the two notes to Foster and express sorrow that he had involved the latter; that he had not had the notes discounted (taking them out of his wallet and handing them to Foster). This was excluded because the court said the conversation between Foster and the witness could not bind the state. That, however, was not the question. The state had been allowed to put in Smith's evidence tending, as it thought, to show guilty knowledge on the part of Foster. It was vital to the defendant to show that he had no such knowledge, and any testimony that would show that he was relying on Smith's statement on July 17th that Smith had disposed of the note and that it was all right to draw on the account was competent. When Smith denied any recollection of the conversation, it was proper, by way of stimulating his memory or discrediting him, to show what he said at a later time.

For these errors the judgment must be reversed and the record remitted for a new trial.